# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| THOMAS D. HOLMES,<br><br>    Petitioner,<br><br>vs.<br><br>RANDY GIBBS, Warden, Iowa State Penitentiary,<br>    Respondent. | No. 20-CV-2070-CJW-MAR<br><br>**ORDER** |

This matter is before the Court on petitioner Thomas D. Holmes' ("petitioner") petition for a writ of habeas corpus under Title 28, United States Code, Section 2254. (Doc. 1). Petitioner was found guilty of Kidnapping in the First Degree (Count 1) and Robbery in the First Degree (Count 2) after a bench trial. (*Id.*). Petitioner asserts three related grounds for relief: (1) the district court's oral pronouncement of guilt and sentence and written judgment were in error on Count 1 because they referred to a nonexistent Iowa Code section; (2) he is being held illegally since his sentence on Count 2 has expired; and (3) the Department of Corrections illegally altered his judgment to reflect the correct code section. (*Id.*). After conducting an initial review, and for the reasons that follow, the Court **denies** petitioner's application and **dismisses** this case.

## I.  RULE 4 REVIEW

Rule 4 of the Rules Governing Section 2254 Cases requires the Court to conduct an initial review of an application for a writ of habeas corpus and summarily dismiss it, order a response, or take such action as the judge deems appropriate. *See* Rule 4, Rules Governing Section 2254 Cases. The Court may summarily dismiss an application for a writ of habeas corpus without ordering a response if it plainly appears from the face of

such application and its exhibits that the petitioner is not entitled to relief. *See id.*; 28 U.S.C. § 2243; *Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993).

## II. BACKGROUND

### A. Factual Background and Bench Trial

> [T]he victim of [petitioner's] brutal assault, rape, and robbery, was discovered crawling out of a deep and grassy roadside ditch early in the morning on June 25, 1999. She was half-naked, bloody, badly bruised, and had a blood-alcohol content of .221. She testified at trial that she met [petitioner] at an after-hours house called Eddie B's. She remembered ordering a beer at Eddie B's but did not recall how she ended up in her car with [petitioner].

*Holmes v. State*, 775 N.W.2d 733, 736 (Iowa Ct. App. 2009).

> Meanwhile, officers were called to a Waterloo apartment complex in response to a report that a man, later identified as Holmes, was throwing rocks at the window of an apartment. They arrived to find Holmes having a heated discussion with a woman named April, about certain property Holmes contended was missing. At Holmes' insistence, the officers agreed to file a missing property report on his behalf. They did not know at the time that the name Holmes gave them was false.
>
> The officers ran a warrant check on the false name. No warrants were outstanding. They told Holmes to leave the area and Holmes walked away.
>
> April then informed the officers Holmes had driven to her apartment in a red car located in the parking lot but had walked rather than driven away because he had a suspended license. When nothing came back on the license check, the officers inquired about Holmes' true identity. After running a second check on his actual name, they discovered Holmes' license had indeed been suspended. One of the officers went to look for Holmes, found him in an alley, and arrested him for interference with official acts for providing the officers with a false name.
>
> Holmes was taken to the police station where, during a search incident to his arrest, police discovered a registration paper for the car driven by the assault victim and a single key that fit the door of that car. Holmes made

several statements that led police to witnesses who observed Holmes and the victim together the night of the incident.

On the day of Holmes' arrest, police obtained a search warrant for Holmes' hair, blood and other body samples. DNA analysis of the samples revealed the presence of the victim's DNA in Holmes' penile DNA swab and on his underwear. In addition, Holmes' DNA was identified on the victim's underwear.

*State v. Holmes*, No. 00-950, 2001 WL 1577584, at *1 (Iowa Ct. App. Dec. 12, 2001).

On July 6, 1999, the State filed a trial information charging petitioner with kidnapping in the first degree, in violation of Iowa Code section 710.2(3),(4), and 710.2 (1999), and with robbery in the first degree, in violation of Iowa Code sections 711.1(1),(2),(3), and 711.2. The information's reference to Iowa Code Section 710.2(3) and (4) was a typographical error; the correct Iowa Code Section is 710.1(3) and (4). Petitioner entered pleas of not guilty to both charges.

On April 24, 2000, following a bench trial, the district court found petitioner guilty of both charged offenses. During the pronouncement the court referenced section 710.2(3) and (4) as to the kidnapping in the first-degree charge, carrying forward the typographical error from the information. The court again referenced the same incorrect code section 710.2(3) and (4) at the sentencing hearing and in the written sentencing order.

### B.     *State Court Appeals and Postconviction Proceedings*

In its opinion rejecting petitioner's state postconviction relief application, the Iowa Court of Appeals summarized the state district court proceedings thus:

Following a bench trial in February 2000, Holmes was convicted of first-degree kidnapping and first-degree robbery. He was sentenced to life in prison without parole on the kidnapping charge to be served concurrently with an indeterminate twenty-five-year sentence on the robbery charge. Holmes appealed, raising two claims: (1) the district court erred in denying his motion to suppress body samples taken from him following an arrest for

3

> interference with official acts that was later deemed unlawful and (2) the court erred in admitting the victim's in-court identification of him and testimony from the State's fingerprint and DNA experts. *See State v. Holmes*, No. 00-950, 2001 WL 1577584 (Iowa Ct. App. Dec. 12, 2001). We denied those claims and affirmed his convictions and sentence. *Id.*
>
> Holmes filed a pro se application for postconviction relief in March 2002. That application was amended at least five times by Holmes and the various attorneys that represented him during the postconviction proceedings. Following several motions to dismiss filed by the State on res judicata and statute of limitations grounds, Holmes's application finally came before the district court for hearing in March 2008. By that time, the grounds for relief presented in the application had been narrowed to seven, each of which was denied by the district court in a detailed ruling.

*Holmes*, 775 N.W.2d at 734.

> On appeal, petitioner asserted:
>
> [H]is appellate and postconviction counsel rendered ineffective assistance for (1) "failing to demonstrate that, contra[r]y to the court of appeals findings, much of the independent evidence on which the court of appeals upheld the validity of the search warrant was not discovered until *after* Mr. Holmes's unlawful arrest"; (2) "failing to argue that some of the 'untainted' facts on which the court of appeals upheld the validity of the search warrant were, in fact, the result of Mr. Holmes's unlawful arrest"; and (3) "failing to challenge the admission of physical samples obtained from Mr. Holmes because they were a direct product of his unlawful arrest." He additionally claims his trial, appellate, and postconviction counsel rendered ineffective assistance because they did not challenge the sufficiency of the evidence on his first-degree kidnapping conviction.

*Id.* at 734-35. The Iowa Court of Appeals affirmed the district court's denial of petitioner's postconviction petition. *Id.* at 737.

> Several years later,
>
> [o]n July 23, 2012, Holmes filed another postconviction-relief application alleging (1) "the trial information charged crime of first degree kidnapping lacks statutory validity as to charge no offense and is therefore void" and

> (2) "due to charging instruments failure to charge an offense in violation of Holmes's fifth[,] sixth, and fourteenth amendment protections and guarantees under the United States and Iowa constitutions his judgment and sentence is void." Two days later, he filed a motion to correct an illegal sentence raising the same issue. He asserted his judgment and sentence were "'VOID' as a matter of law," because the trial court cited "a criminal code section that doesn't exist in the Iowa Code."
>
> The district court merged the 2012 motion and postconviction-relief application. In a joint order, the court granted the State's motion to dismiss the postconviction-relief application as time-barred. The court denied Holmes's motion to correct illegal sentence but corrected an "obvious typographical or scrivener's error" in the sentencing order.
>
> Holmes appealed the joint order. The Iowa Supreme Court divided the appeal into its components and separately transferred both appeals to this court. [The Iowa Court of Appeals] affirmed the portion of the order relating to correction of an illegal sentence. *See State v. Holmes*, No. 12–2312, 2013 WL 6405363, at *2 (Iowa Ct. App. Dec. 5, 2013). We held the sentence was not illegal and the sentencing court's reference to an incorrect code provision was a "clerical" error, which the district court corrected.

*Holmes v. State*, No. 12–2301, 2015 WL 4936382, at *1 (Iowa Ct. App. Aug. 19, 2015). In a separate ruling, the Iowa Court of Appeals denied petitioner's appeal from the dismissal of the postconviction-relief application. *Id.* at *2.

As for the error in the Iowa Code section citation, petitioner claimed a violation of his Fifth and Fourteenth Amendment rights. 2013 WL 6405363, at *1. In rejecting this claim, the Iowa Court of Appeals stated:

> We are not convinced Holmes sentence was illegal. Holmes does not claim here, nor did he in his pro se motion, that he was unaware what crime he was charged with—namely kidnapping in the first degree—and what specific elements were involved in the State's theory of prosecution at the time of trial. As the district court noted in its ruling:

> From the time the trial information was filed on July 6, 1999, until Mr. Holmes was sentenced on May 22, 2000, Mr. Holmes never complained that he was unaware of the nature of the charges against him. Neither party ever raised the typographical error issue, and the court also did not correct the scrivener's error in the specifications portion of the trial information. The trial transcript shows clearly that Mr. Holmes and his attorneys were well-aware that Mr. Holmes was facing the charge of Kidnapping in the First Degree, and were well-aware of the specific elements involved in the State's theory of prosecution. Those specifications are obviously set forth in section 710.1, Code of Iowa, rather than 710.2, Code of Iowa.
>
> In the trial court's Ruling and Order filed April 25, 2000, the trial court accurately set forth the applicable law, and specifically identified the specifications relied upon under section 710.1 and 710.2, Code of Iowa (pages 11, 12, 13). Unfortunately, the scrivener's error set forth in the specifications portion of the trial information carried over into the court's Ruling on page 15, and again carried over onto the court's Sentencing Order, notwithstanding the fact that the undersigned was mindful of the fact that the kidnapping specifications relied upon were pursuant to section 710.1(3), (4) and not 710.2(3), (4). Mr. Holmes is correct that section 710.2 has no subparagraphs at all.

The court correctly referred to the crime as first-degree kidnapping throughout Holmes' criminal proceeding. The court also sentenced Holmes to a term of life imprisonment, as is appropriate for class "A" felonies such as first-degree kidnapping. *See* Iowa Code §§ 710.2, 902.1(1). The record reflects the error made by the sentencing court was clerical. *See State v. Hess*, 533 N.W.2d 525, 527 (Iowa 1995) ("An error is clerical in nature if it is not the product of judicial reasoning and determination.").

When an error is clerical in nature, the proper remedy is to correct the judgment entry. *See id.* ("[W]hen the record unambiguously reflects that a clerical error has occurred, we will direct the district court to enter a nunc pro tunc order to correct the judgment of entry."). In the present case, the

6

Case 6:20-cv-02070-CJW-MAR   Document 8   Filed 01/13/21   Page 6 of 12

district court has already corrected the sentencing order with its ruling on Holmes' pro se motion.

Because the error alleged by Holmes was unambiguously clerical in nature and has already been corrected by the district court's order, we affirm.

*Id.* at *1-2 (footnotes omitted).

Petitioner filed yet another postconviction petitioner in state court, raising the same issue. The Iowa Court of Appeals again affirmed the district court's rejection of this argument.

> In this current PCR action, Holmes raises the very same issues raised in the two 2012 proceedings, namely that the clerical error regarding the kidnapping code sections requires vacation of his kidnapping conviction and sentence. His claims fail for the same reasons they failed last time, in addition to now failing on the principle of res judicata. *See State v. Weitzel*, 192 N.W.2d 762, 764 (Iowa 1971) (holding a PCR proceeding is not intended as a vehicle to relitigate issues previously adjudicated). We affirm the district court without further opinion, as a full opinion would not augment or clarify existing case law. *See* Iowa Ct. R. 21.26(1)(e). Any other issues mentioned in the briefs filed by Holmes and his counsel are deemed waived for failing to cite authority or make arguments in support of them. *See* IOWA R. APP. P. 6.903(2)(g)(3).

*Holmes v. State*, No. 18-1467, 2020 WL 2060293, at *1 (Iowa Ct. App. April 29, 2020).

### III.   ANALYSIS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "an application for a writ of habeas corpus may not be granted unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Armstrong v. Hobbs*, 698 F.3d 1063, 1065 (8th Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)). A decision is contrary to federal law "if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if it confronted facts that

are materially indistinguishable from a relevant Supreme Court precedent but arrived at an opposite result." *Davis v. Norris*, 423 F.3d 868, 874 (8th Cir. 2005) (internal quotation marks omitted). "A state court unreasonably applies clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (internal quotation marks omitted).

The "Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner" and no "constitutional provision exists to provide unjustified windfalls" to defendants. *Jones v. Thomas*, 491 U.S. 376, 387 (1989) (internal quotations omitted). Here, petitioner attempts to raise a scrivener's error to the level of a constitutional violation. His effort falls woefully short.

Clerical and scrivener errors in references to code and statutory sections are not constitutional errors. They do not affect a prisoner's substantive constitutional rights. *See, e.g.*, *Dyab v. United States*, 855 F.3d 919, 923 (8th Cir. 2017) ("Fixing typographical errors and the like does not substantively alter a prisoner's sentence . . . ."); *Snyder v. Swarthout*, No. 2:11–cv–3064 JAM KJN P, 2012 WL 439644, at *9 (E.D. Cal. Feb. 9, 2012) (finding a judge's immaterial misstatement of a code section—citing Penal Code 3041(b)(3), which did not exist instead of Penal Code Section 3041.5(b)(3)— "does not state a colorable claim for a constitutional violation").

Accordingly, it follows that federal courts have repeatedly found on habeas review that state courts' denials of claims challenging trial judges' clerical errors were not contrary to or an unreasonable application of clearly established federal law. *See, e.g.*, *Partee v. Stegall*, 8 F. App'x 466, 468 (6th Cir. 2001) (rejecting habeas claim based on an assertion that state court cited wrong statute of conviction); *Villegas v. Ndoh*, No. CV 16–9671–JFW (KS), 2018 WL 1305719, at *17 (C.D. Cal. Feb. 15, 2018) ("Because the typographical errors in the verdict form referring incorrectly to Penal Code § 288(c)

8

[instead of the correct code section 288a(c)] did not create trial error of constitutional significance, the state court's rejection of this claim was not objectively unreasonable."); *Camacho v. Rosa*, No. CV 09–5527–RSWL (RZ), 2010 WL 3952873, at *2–3 (C.D. Cal. Aug.18, 2010) (denying state prisoner's claim that trial court's error of giving wrong verdict form to jury entitled him to habeas relief because both counsel and judge referred to correct count throughout trial and jury was properly instructed); *Goins v. McDonald*, No. 1:09–CV–00882–LJO GSA HC, 2009 WL 4048601, at *7, *11 (E.D. Cal. Nov.20, 2009) (finding no clearly established Supreme Court precedent mandating that "typographical errors on a verdict form result in an unconstitutional sentence" or requiring sentence to be "consistent with the verdict form rather than as set forth in the charging document and jury instructions"); *White v. Schriro*, No. CV 05–3212–PHX–FJM, 2007 WL 2410335, at *2 (D. Ariz. Aug. 21, 2007) (rejecting petitioner's habeas claim based on trial court's citation to a nonexistent statute because "[o]bviously, the typographical error is immaterial").

Here, petitioner does not challenge the state court factual findings that petitioner "never complained that he was unaware of the nature of the charges against him." 2013 WL 6405363, at *2. Petitioner does not challenge the state court factual findings that "[t]he trial transcript shows clearly that Mr. Holmes and his attorneys were well-aware that Mr. Holmes was facing the charge of Kidnapping in the First Degree, and were well-aware of the specific elements involved in the State's theory of prosecution." *Id.* Petitioner does not dispute that the trial judge "was mindful of the fact that the kidnapping specifications relied upon were pursuant to section 710.1(3), (4) and not 710.2(3), (4)." *Id.* Finally, petitioner does not dispute that "[t]he court correctly referred to the crime as first-degree kidnapping throughout Holmes' criminal proceeding." *Id.* Thus, this is not a case in which petitioner has stated a claim that a scrivener's error led to a deprivation

of his due process rights, prevented him from presenting a viable defense, or in any way misled him or his trial attorney in the defense of his case.

Further, this Court concludes that the typographical error was harmless. There is nothing in the record to indicate that the trial judge was misled by the typographical error and there is no possibility that the judge would have acquitted petitioner had the judge cited to the correct code section. To the contrary, the trial judge stated that he was aware of the correct code section at all times. Nothing in the record indicates that petitioner was prejudiced in any way by the scrivener's error. *See, e.g.*, *Washington v. Saffle*, No. 00-6190 , 2000 WL 1800500, at *1 (10th Cir. Dec. 7, 2000) (finding scrivener's error between facts alleged in criminal information and evidence at trial—alleging petitioner committed anal sodomy when he committed oral sodomy—was harmless error for which petitioner was not entitled to habeas relief); *Henry v. United States*, 432 F.2d 114, 117–18 (9th Cir. 1970) (finding erroneous reference to a code section in an indictment did not prejudice defendant and was harmless beyond a reasonable doubt), *amended*, 434 F.2d 1283 (1971); *Burrow v. Sec'y, Dept. of Corr.*, No. 2:11–cv–60–FtM–29UAM, 2014 WL 1092452, at *16 (M.D. Fla. Mar. 19, 2014) (finding that trial court's citation to nonexistent code section was "simply a scrivener's error and harmless").

Thus, upon initial review the Court finds that it plainly appears from the face of petitioner's application that petitioner is not entitled to relief. Because all three of petitioner's grounds are related and turn on the flawed assertion that a scrivener's error violated his constitutional rights, the Court need not separately address each ground. The scrivener's error was harmless and did not violate petitioner's constitutional rights. That means that petitioner is not being held illegally because his sentence for kidnapping remains valid. Likewise, the Department of Corrections did not violate petitioner's rights because the district court entered a nunc pro tunc order citing the correct code section. Therefore, petitioner's application is denied in its entirety and this case is dismissed.

## IV. *CERTIFICATE OF APPEALABILTY*

"In a habeas corpus proceeding . . . before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held." 28 U.S.C. § 2253(a). "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. . . ." *Id.* § 2253(c)(1). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Federal Rule of Criminal Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under Title 28, United States Code, Section 2253(c)(2), a certificate of appealability may issue only if a petitioner "has made a substantial showing of the denial of a constitutional right." *See Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir. 2000); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 522. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo,* 16 F.3d 878, 882–83 (1994)); *see also Miller–El*, 537 U.S. at 335–36 (reiterating standard).

Here, the Court finds that it is not debatable among reasonable jurists that a scrivener's error in the citation to a code section rose to the level of a constitutional violation. Accordingly, the Court will not issue a certificate of appealability under Title 28, United States Code, Section 2253.

If petitioner desires further review of his claims, he may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520–22.

## V. CONCLUSION

For the reasons stated:

1. The Petition (Doc 1) is **dismissed with prejudice**.

2. A certificate of appealability shall not issue.

**IT IS SO ORDERED** this 13th day of January, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa